UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OWNERS INSURANCE COMPANY and AUTO-OWNERS INSURANCE COMPANY,<br><br>      Plaintiffs,<br><br> v.<br><br>TENINGA-BERGSTROM REALTY COMPANY and LATRESHA GARNER, *on behalf of her minor child, J.W.*,<br><br>      Defendants. | Case No. 1:24-cv-4264 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Owners Insurance Company ("Owners") and Auto-Owners Insurance Company ("Auto-Owners") (collectively, "Insurers"), through undersigned counsel, hereby bring their Complaint for Declaratory Judgment against Teninga-Bergstrom Realty Company ("Realty Company") and Latresha Garner, on behalf of her minor child, J.W. ("Garner"). In further support, the Insurers allege as follows:

**NATURE OF THE CASE**

1. This is a Declaratory Judgment action to determine the rights and obligations under certain commercial general liability and umbrella policies, arising out of Garner's lawsuit against the Realty Company in the Circuit Court of Cook County, Illinois, *Latresha Garner, as mother and next friend of J.W., a Minor v. Teninga-Bergstrom Realty Company*, 2020 L 002126 ("Underlying Lawsuit").

## THE PARTIES

2. Owners is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business located in Lansing, Michigan. Therefore, Owners is a citizen of the States of Ohio and Michigan.

3. Auto-Owners is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business located in Lansing, Michigan. Therefore, Auto-Owners is a citizen of the State of Michigan.

4. The Realty Company is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located in Chicago, Illinois. Therefore, the Realty Company is a citizen of the State of Illinois. The Realty Company is the named insured under the insurance policies at issue in this coverage action.

5. Garner is domiciled in Chicago, Illinois. Therefore, Garner is a citizen of the State of Illinois.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Venue is proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this lawsuit occurred in the Northern District of Illinois, including where the Realty Company maintains its principle place of business, where the Underling Lawsuit is pending, and where the facts alleged in the Underlying Lawsuit occurred.

8. An actual justiciable controversy exists between (1) Owners and Auto-Owners, and (2) the Realty Company. Therefore, pursuant to Fed. R. Civ. P 57 and 28 U.S.C. §§ 2201, the Court

has the authority to declare the rights and liabilities of the parties, and to grant such relief as it deems necessary and proper.

## FACTUAL BACKGROUND

I. **THE POLICIES**

    A. **The Primary Policies**

9. For the period from December 31, 2004 through December 31, 2005, Owners insured the Realty Company under Commercial General Liability No. 044604-07206128-04 ("2005 Primary Policy"). A true and accurate copy of the 2005 Primary Policy is attached as Exhibit A.

10. The 2005 Primary Policy contains an Each Occurrence Limit of $1,000,000, and a General Aggregate Limit of $2,000,000.

11. For the period from December 31, 2005 through December 31, 2006, Owners insured the Realty Company under Commercial General Liability No. 044604-07206128-05 ("2006 Primary Policy"). A true and accurate copy of the 2006 Primary Policy is attached as Exhibit B.

12. The 2006 Primary Policy contains an Each Occurrence Limit of $1,000,000, and a General Aggregate Limit of $2,000,000.

13. In relevant part, the 2005 Primary Policy and the 2006 Primary Policy (collectively, "Primary Policies") require Owners to "pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" which "occurs during the policy period" and "is caused by an 'occurrence' that takes place in the 'coverage territory.'"

14. The Primary Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time."

15. The Primary Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

B. **The Umbrella Policies**

16. For the period from December 31, 2004 through December 31, 2005, Auto-Owners insured the Realty Company under Umbrella Policy No. 46-206-128-00 ("2005 Umbrella Policy"). A true and accurate copy of the 2005 Umbrella Policy is attached as Exhibit C.

17. The 2005 Umbrella Policy contains an Each Incident Limit of $1,000,000, and an Aggregate Limit of $1,000,000.

18. For the period from December 31, 2005 through December 31, 2006, Auto-Owners insured the Realty Company under Umbrella Policy No. 46-206-128-00 ("2006 Umbrella Policy"). A true and accurate copy of the 2006 Umbrella Policy is attached as Exhibit D.

19. The 2006 Umbrella Policy contains an Each Incident Limit of $1,000,000, and an Aggregate Limit of $1,000,000.

20. In relevant part, the 2005 Umbrella Policy and the 2006 Umbrella Policy (collectively, "Umbrella Policies") require Auto-Owners to "pay those sums included in the term ultimate net loss that the insured becomes legally obligated to pay as damages because of . . . bodily injury" which "take[s] place during the policy period" and is "caused by an incident" that "take[s] place in the policy territory."

21. The Umbrella Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time."

22. The Umbrella Policies define "incident" as "an accident . . . including continuous or repeated exposure to substantially the same general harmful conditions."

23. Additionally, the Umbrella Policies contain an Errors and Omissions Exclusion, which excludes liability "(1) arising out of the performance of professional services for others in the conduct of the insured's business or profession; and (2) caused by any negligent act, error or omissions of (a) the insured or (b) a person for whose acts the insured is legally liable."

**B.     THE UNDERLYING LAWSUIT**

24. On February 20, 2020, Garner, on behalf of her minor child, J.W., sued the Realty Company, which managed the property located at 1955 East 73rd Place, Chicago, Illinois ("Property"). A true and accurate copy of the Complaint in the Underlying Lawsuit is attached as Exhibit E.

25. According to the Complaint, Garner leased the Property from the Realty Company in 2005, at which point J.W. was exposed to lead hazards. As a result, Webster suffered lead poisoning and brain damage.

26. At some point in 2006, Garner ceased living at the Property.

27. The Complaint alleged that the Realty Company violated the Residential Lead-Based Paint Hazard Reduction Act and its corresponding regulations, including failing to provide the requisite lead disclosure.

**C.     THE CLAIMS**

28. On approximately September 24, 2020, the Realty Company tendered to Owners and Auto-Owners the defense of the Underlying Lawsuit.

29. Auto-Owners agreed to defend the Realty Company in the Underlying Lawsuit under a reservation of rights.

30. Since then, Garner has demanded damages that far exceed the per-Occurrence and per-Incident limits under the Primary and Umbrella Policies.

## COUNT I
## DECLARATORY JUDGMENT
### *Owners*

31. The foregoing paragraphs of this Complaint are incorporated in this Paragraph 31 as if specifically and fully set forth.

32. The Primary Policies only cover "bodily injury" that "occurs during the policy period" and "is caused by an 'occurrence,'" which means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

33. In the Underlying Complaint, Garner alleges that she leased the Property in 2005, at which point J.W. was exposed to lead hazards and suffered lead poisoning.

34. Therefore, the Underlying Complaint alleges a single "occurrence" that transpired in 2005.

35. Accordingly, Owners is only liable for the Each Occurrence Limit of $1,000,000 under the 2005 Primary Policy, and nothing under the 2006 Primary Policy.

36. In the alternative, because Garner has only alleged a single "occurrence," Owners is only liable for the Each Occurrence Limit of $1,000,000 under the 2005 Primary Policy, and the Each Occurrence Limit of $1,000,000 under the 2006 Primary Policy, for a total of $2,000,000.

37. Owners denies any and all liability above these limits. Thus, because Garner's demands exceed these limits, Owners is in peril and in danger of loss unless the Court properly construes the rights of all parties under the Primary Policies.

WHEREFORE, Owners Insurance Company respectfully requests that this Court enter judgment as follows:

(1) Declaring that Owners is only liable for the Each Occurrence Limit of $1,000,000 under the 2005 Primary Policy, and nothing under the 2006 Primary Policy;

(2)     In the alternative, declaring that Owners is only liable for the Each Occurrence Limit of $1,000,000 under the 2005 Primary Policy, and the Each Occurrence Limit of $1,000,000 under the 2006 Primary Policy, for a total of $2,000,000.

(3)     Awarding Owners any such other relief that the Court deems just and proper.

## COUNT II
## DECLARATORY JUDGMENT
*Auto-Owners*

38.     The foregoing paragraphs of this Complaint are incorporated in this Paragraph 38 as if specifically and fully set forth.

39.     The Umbrella Policies contain an Errors and Omissions Exclusion, which excludes liability "(1) arising out of the performance of professional services for others in the conduct of the insured's business or profession; and (2) caused by any negligent act, error or omissions of (a) the insured or (b) a person for whose acts the insured is legally liable."

40.     The Realty Company's liability in the Underlying Lawsuit (1) "aris[es] out of the performance of professional services" (real estate management services) "for others" (Garner and J.W.) "in the conduct of [the Realty Company's] business or profession" (real estate management), and (2) was "caused by [the Realty Company's] negligent act, error or omissions" (lead exposure and failing to provide the requisite lead-based paint disclosure).

41.     Therefore, Auto-Owners has no liability under the Umbrella Policies.

42.     In the alternative, the Umbrella Policies only cover "bodily injury" which "take[s] place during the policy period" and is "caused by an incident," which means "an accident . . . including continuous or repeated exposure to substantially the same general harmful conditions."

43.     In the Underlying Complaint, Garner alleges that she leased the Property in 2005, at which point J.W. was exposed to lead hazards and suffered lead poisoning.

-8-

44. Therefore, the Underlying Complaint alleges a single "incident" that transpired in 2005.

45. Accordingly, Auto-Owners is only liable for the Each Incident Limit of $1,000,000 under the 2005 Umbrella Policy, and nothing under the 2006 Umbrella Policy.

46. Auto-Owners denies any and all liability above these limits. Thus, because Garner's demands exceed these limits, Auto-Owners is in peril and in danger of loss unless the Court properly construes the rights of all parties under the Umbrella Policies.

WHEREFORE, Auto-Owners Insurance Company respectfully requests that this Court enter judgment as follows:

(1) Declaring that Auto-Owners has no liability under the Umbrella Policies;

(2) In the alternative, declaring that Auto-Owners is only liable for the Each Incident Limit of $1,000,000 under the 2005 Umbrella Policy, and nothing under the 2006 Umbrella Policy;

(3) Awarding Auto-Owners any such other relief that the Court deems just and proper.

Dated this 23rd day of May, 2024.

Respectfully submitted,

/s/ Krysta K. Gumbiner
Krysta K. Gumbiner
Brian J. Talcott
Dinsmore & Shohl LLP
222 W. Adams Street, Suite 3400
Chicago, IL 60606
Phone: (312) 372-6060
Fax: (312) 372-6085
Krysta.Gumbiner@Dinsmore.com
Brian.Talcott@Dinsmore.com

**Counsel for Owners Insurance Company and Auto-Owners Insurance Company**